**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Angel's Touch Incorporated, | No. CV-21-08026-PCT-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Xavier Becerra, et al., | |
| Defendants. | |

Before the Court are Plaintiff Angel's Touch Inc.'s ("Plaintiff" or "Angel's Touch") motion for preliminary injunction and Defendants' motion to dismiss. (Docs. 2, 10, 16.) As is explained below, the Court lacks subject-matter jurisdiction over this dispute. Defendants' motion to dismiss is granted; Plaintiff's motion for preliminary injunction is denied as moot.

## I.    BACKGROUND

### A.    Parties

Plaintiff is a Medicare-certified home health agency that provides services to approximately 312 patients in Cottonwood, Arizona, and surrounding areas. (Doc. 1 ¶¶ 13–14.) It provides nursing services; speech, occupational, and physical therapy; home health aides; medical social workers; wound care; and IV infusion therapy. (Doc. 23 at 2 ¶ 3.) For "some" Medicare beneficiaries, Plaintiff is the only approved home health provider. (*Id.* at 16 ¶ 7.) Approximately 98 percent of Plaintiff's total annual revenue derives from Medicare reimbursement. (*Id.* at 3 ¶ 4.)

Defendants are Xavier Becerra, Secretary of the United States Department of Health and Human Services ("HHS") (the "Secretary"),[1] and Elizabeth Richter, Acting Administrator for the Center for Medicare and Medicaid Services ("CMS"), in their official capacities.

### B.   Statutory Scheme

Medicare is a federally funded health insurance program for aged and disabled persons. 42 U.S.C. § 1395 *et seq.* It is a "massive, complex" health program, "embodied in hundreds of pages of statutes and thousands of pages of often interrelated regulations." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000). Medicare Part A, applicable here, provides insurance benefits for inpatient hospital and related services and reimburses providers of such services. 42 U.S.C. §§ 1395d, 1395g. Medicare coverage is limited to services that are deemed medically "reasonable and necessary." 42 U.S.C. § 1395y(a)(1)(A).

Medicare service providers, such as Plaintiff, submit claims for reimbursement for covered services. They are generally paid upon submission but remain subject to later "necessary adjustments on account of previously made overpayments or underpayments." 42 U.S.C. § 1395g(a). A Medicare contractor may determine the total overpayment amount through extrapolation of a claims sample if the Secretary determines that "there is a sustained or high level of payment error" or "documented educational intervention has failed to correct the payment error." 42 U.S.C. § 1395ddd(f)(3).

Fiscal intermediaries known as Medicare Administrative Contractors ("MACs") make initial coverage determinations. 42 C.F.R. § 405.920. MACs' initial determinations are then subject post-payment review by, in this instance, a Unified Program Integrity Contractor ("UPIC").

For providers who disagree with the UPIC's determination, the administrative

---

[1] The Complaint originally named Norris W Cochran, IV, then the Acting Secretary. He has since been substituted by Secretary Becerra pursuant to Fed. R. Civ. P. 25(d). (Doc. 20.)

appeals process consists of the following. First, a Medicare provider may request a "redetermination" by the MAC. 42 C.F.R. § 405.940. Second, the provider may appeal the redetermination to a qualified independent contractor ("QIC") for "reconsideration." *Id.* § 405.960. If the QIC affirms and the reconsideration becomes final, recoupment of overpayment may then commence. *Id.* § 405.379(f).

Third, a provider may appeal the reconsideration and request a hearing before an administrative law judge ("ALJ") at the Office of Medicare Hearings and Appeals ("OMHA"). *Id.* § 405.1002. The ALJ "shall conduct and conclude a hearing . . . and render a decision . . . not later than" 90 days of a timely request. 42 U.S.C. § 1395ff(d)(1)(A); 42 C.F.R. § 405.1016. Due to a "massive backlog" of Medicare appeals, however, the average processing time, from request to an ALJ decision, has reached 1448 days. (Doc. 10 at 10); *All Home Med. Supply, Inc. v. Azar*, No. 19CV496-LAB (BGS), 2019 WL 2422690, at *1 (S.D. Cal. June 10, 2019). *See also Family Rehabilitation, Inc. v. Azar*, 886 F.3d 496, 500 (5th Cir. 2018) ("Yet an ALJ hearing is not forthcoming—not within 90 days, and not within 900 days. According to [plaintiff]—and effectively conceded by the government— it will be unable to obtain an ALJ hearing for at least another three to five years.").

Fourth and finally, a provider may seek review of the ALJ's decision by the Medicare Appeals Council. 42 C.F.R. § 405.1100.  The Appeals Council's ruling is the final decision of the Secretary. It may be appealed to a federal district court. 42 U.S.C. § 405(g); 42 C.F.R. § 405.1130. *See also Palomar Med. Ctr. v. Sebelius*, 693 F.3d 1151, 1154–55 (9th Cir. 2012).

If a provider does not receive a decision within the prescribed period, it may bypass steps in the administrative review process through "escalation." 42 U.S.C. § 1395ff(d)(3); 42 C.F.R. § 405.1100(c). If an ALJ fails to issue a decision within 90 days, a provider may bypass this third level of review by escalating the appeal directly to the Appeals Council, which then has 90 days to act on the escalation request. 42 U.S.C. § 1395ff(d)(3)(A). If the Appeals Council does not render a decision within 90 days, a provider may seek judicial review of the Secretary's most recent determination in federal court. 42 C.F.R.

§§ 405.1132, 405.1100(d).

### C.    Factual and Procedural Background

In 2019, a UPIC called Qlarant Integrity Solution ("Qlarant") reviewed a sample of 42 of Plaintiff's Medicare claims. It denied 23 of the 42 on grounds that medical records did not indicate that the home health services provided were reasonable and necessary. Qlarant determined that Plaintiff owed $76,470.56 for the 23 denials. It extrapolated this amount to determine that, in total, Plaintiff owed an overpayment amount of $3,974,669.00. (Doc. 1 ¶ 44; Doc. 10-3 at 44.)

Plaintiff timely requested a MAC redetermination—the first level of the administrative appeals process—on April 23, 2020. (Doc. 1 ¶ 44.) On August 20, 2020, Plaintiff received the redetermination decision from the assigned MAC, National Government Services, Inc. The MAC reduced the overpayment amount by more than $700,000, plus applied a previously withheld amount, for a remaining overpayment of $2,821,653.60. (Doc. 10-3 at 52.)

Plaintiff timely requested reconsideration—the second level of review—by a QIC, Maximus Federal Services, on September 23, 2020. The QIC affirmed the overpayment amount in full. (*Id*. at 57.)

Plaintiff then timely requested an ALJ hearing on December 23, 2020.[2] (Doc. 1 ¶ 47.) The ALJ hearing request remains pending. As such, Plaintiff has completed only two of the four levels of the administrative review process. On January 25, 2021, Plaintiff received a notice from the MAC demanding payment of the $2,821,653.60 alleged overpayment by no later than February 18, 2021. (Doc. 10-3 at 77.)

On February 9, 2021, Plaintiff filed its Complaint and motion for a temporary restraining order and preliminary injunction. (Docs. 1, 2, 10.) Plaintiff brings one claim: a procedural due process violation pursuant to the Fifth Amendment of the United States Constitution and the Social Security Act (specifically 42 U.S.C. § 1395ff(d)(1)(A)). It

---

[2] The Complaint indicates that an ALJ had not yet been assigned; the parties indicated at oral argument that an ALJ has since been assigned.

1    asserts that Defendants are statutorily required to provide Plaintiff with an ALJ hearing

2    within 90 days of its request—which deadline passed on March 23, 2021. Plaintiff argues

3    that permitting recoupment to proceed before an ALJ hearing occurs years later will

4    deprive it of its protected property and liberty interests. (Doc. 1 ¶¶ 62–67.)

5          Pursuant to the parties' stipulation, Plaintiff's motion was recast as solely a motion

6    for preliminary injunction upon Defendants' agreement to delay recoupment pending

7    resolution of the motion for preliminary injunction and Defendants' motion to dismiss.

8    (Doc. 14.) Also pursuant to the parties' stipulation, Defendants filed a combined response

9    to Plaintiff's motion for preliminary injunction, plus a motion to dismiss pursuant to Rule

10   12(b)(1) and 12(b)(6). Defendants argue that the case should be dismissed because Plaintiff

11   has not exhausted its administrative remedies and the Court therefore lacks jurisdiction, or,

12   alternatively, because Plaintiff cannot state a claim for a procedural due process violation.

13   Defendants also argue that Plaintiff cannot establish the elements required for a preliminary

14   injunction. Both motions are now fully briefed. (Docs. 18, 20.) The Court heard oral

15   argument on May 13, 2021. (Doc. 25.)

16   **II.    LEGAL STANDARDS**

17        **A.    Preliminary Injunction**

18        A preliminary injunction is an extraordinary remedy that a court will not issue as a

19   matter of right. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008).

20   "A plaintiff seeking a preliminary injunction must establish that [it] is likely to succeed on

21   the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief,

22   that the balance of equities tips in his favor and that an injunction is in the public interest."

23   *Id*. at 20.  In the Ninth Circuit, a showing that there are "serious questions going to the

24   merits and a hardship balance that tips sharply toward the plaintiff can support issuance of

25   an injunction, assuming that the other two elements of the *Winter* test are also met."

26   *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011)

27   (quotations omitted).

28

1

**B.     Motion to Dismiss**

2

**1.     Rule 12(b)(1)**

3

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over

4

which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "When the motion to

5

dismiss attacks the allegations of the complaint as insufficient to confer subject matter

6

jurisdiction, all allegations of material fact are taken as true and construed in the light most

7

favorable to the nonmoving party." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D.

8

Ariz. 2006) (citing *Fed'n. of African Am. Contractors v. City of Oakland*, 96 F.3d 1204,

9

1207 (9th Cir. 1996)). Federal courts may only hear cases as authorized by the Constitution

10

and Congress; namely, cases involving diversity of citizenship, a federal question, or cases

11

to which the United States is a party. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

12

375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and

13

the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*

14

(citations omitted). On a motion to dismiss for lack of subject-matter jurisdiction, the

15

plaintiff has the burden to demonstrate that jurisdiction exists. *Stock West, Inc. v.*

16

*Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

17

**2.     Rule 12(b)(6)**

18

To survive a motion to dismiss for failure to state a claim, a complaint must contain

19

"a short and plain statement of the claim showing that the pleader is entitled to relief" such

20

that the defendant is given "fair notice of what the . . . claim is and the grounds upon which

21

it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 545, 555 (2007) (quoting Fed. R. Civ. P.

22

8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) "can be

23

based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

24

under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699

25

(9th Cir. 1988). A complaint should not be dismissed "unless it appears beyond doubt that

26

the plaintiff can prove no set of facts in support of the claim that would entitle it to relief."

27

*Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000).

28

The Court must accept material allegations in the Complaint as true and construe

them in the light most favorable to Plaintiff. *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983). "Indeed, factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Review of a Rule 12(b)(6) motion is "limited to the content of the complaint." *North Star Int'l*, 720 F.2d at 581.

## III.   DISCUSSION

### A.   Subject-Matter Jurisdiction

The general federal question statute, 28 U.S.C. § 1331, provides that federal district courts have "original jurisdiction" over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Section 405(h) of Title 42 states, however, that "[n]o action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 . . . of title 28 to recover on any claim arising under" the Medicare Act. 42 U.S.C. § 405(h); 42 U.S.C. § 1395ii. Accordingly, "§ 405(h), as incorporated by [42 U.S.C.] § 1395ii, bars federal-question jurisdiction" in this case. *Illinois Council*, 529 U.S. at 5.

Plaintiff argues that subject-matter jurisdiction exists over this dispute pursuant to 42 U.S.C. § 405(g) and the doctrine articulated by the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Section 405(g) provides the "sole avenue" for judicial review of claims arising under the Medicare Act. *Heckler v. Ringer*, 466 U.S. 602, 615 (1984). Specifically, "[j]udicial review of claims arising under the Medicare Act is available only after the Secretary renders a 'final decision' on the claim." *Id.* at 605. The Supreme Court provided in *Eldridge* that a "final decision" under § 405(g) requires two conditions, "only one of which is purely jurisdictional in the sense that it cannot be waived by the Secretary in a particular case." *Eldridge*, 424 U.S. at 328 (quotations omitted). The nonwaivable element is "the requirement that a claim for benefits shall have been presented to the Secretary." *Eldridge*, 424 U.S. at 328. "The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted." *Id*. Defendants move to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, for lack

of subject-matter jurisdiction, based on Plaintiff's purported noncompliance with both requirements. The Court addresses the presentment and exhaustion requirements in turn.

### 1.    Presentment

The first issue is whether Plaintiff "presented" its claim to the Secretary. As noted, Plaintiff brings only a procedural due process claim in the present case. Defendants argue that the Court lacks jurisdiction because Plaintiff never raised its due process argument before the Secretary. Plaintiff responds that *Eldridge* does not require it to have presented its *constitutional* claim to the agency—only the overpayment appeal. These arguments require a close evaluation of the relevant case law.

### a.    *Eldridge* **and** *Haro*

In *Eldridge*, nearly four years after the plaintiff's first award of benefits, a Social Security beneficiary responded to a state agency questionnaire regarding his medical condition. His response indicated that his condition had not improved. Upon review of the questionnaire, medical reports, and other materials, the state agency notified the beneficiary that it had tentatively determined that he was no longer disabled. *Id*. at 323–24. In a written response, the claimant "disputed one characterization of his medical condition and indicated that the agency already had enough evidence to establish his disability." *Id*. at 320. The state agency then made its final determination that he was no longer disabled.

The Social Security Administration accepted this determination and notified the beneficiary that his benefits would terminate at the end of the month. It also advised him of his right to seek reconsideration of the state agency's initial determination within six months. *Id*. Rather than request reconsideration, the beneficiary filed suit in federal district court, alleging a constitutional due process claim against the "administrative procedures . . . for assessing whether there exists a continuing disability." *Id*. at 325.

On appeal, the Supreme Court first assessed whether the district court had jurisdiction to adjudicate the claim under § 405(g).[3] It concluded that "[t]hrough his

---

[3] The Supreme Court first noted that 42 U.S.C. § 405(h) "precludes federal-question jurisdiction in an action challenging denial of claimed benefits." *Id*. at 327 (citing *Weinberger v. Salfi*, 422 U.S. 749 (1975)).

answers to the state agency questionnaire, and his letter in response to the tentative determination that his disability had ceased, [the beneficiary] specifically presented the claim that his benefits should not be terminated because he was still disabled." *Id.* at 329. The Court continued, "[t]he fact that Eldridge failed to raise with the Secretary his constitutional claim to a pretermination hearing is not controlling." *Id*. As a result, the "nonwaivable jurisdictional element was satisfied." *Id*. at 330. The Court then turned to the waivable exhaustion element.

Plaintiff in this case concedes that it has not presented its due process claim to the Secretary. (Doc. 23 at 4 ¶ 13.) Nonetheless, it argues that by submitting its overpayment appeal to the administrative appeals process, it has satisfied *Eldridge*'s presentment requirement such that it may bring its due process claim in federal court.

The parties' dispute relies, in significant part, on the Ninth Circuit's interpretation of *Eldridge* in *Haro v. Sebelius*, 747 F.3d 1099 (2014). In that case, a purported nationwide class of Medicare beneficiaries sought injunctive relief prohibiting the Secretary's policy of requiring "up front" reimbursement of secondary payments from beneficiaries who either appealed a reimbursement determination or sought waiver of the reimbursement obligation. *Id*. at 1104.[4] The beneficiaries argued that this practice was "inconsistent with the secondary payer provisions of the Medicare statutory scheme." *Id*. The district court agreed with the beneficiaries, granting their motion for summary judgment.

On appeal, the Ninth Circuit addressed whether the district court had subject-matter jurisdiction under § 405(g).[5] It stated that it "must first determine whether [plaintiff] fairly presented [the] claim at the administrative level." *Id*. at 1112. It considered plaintiffs' argument that *Eldridge* "stands for the broad proposition that § 405(g)'s presentment requirement is satisfied once a beneficiary has raised a claim for benefits." *Id*. That is,

---

[4] The parties also raised a due process argument, which neither the district court nor the Court of Appeals reached. *Id*.

[5] The court also concluded that § 405(h) precluded federal question jurisdiction under 28 U.S.C. § 1331. *Id*. at 1111. Plaintiff does not argue that 28 U.S.C. § 1331 is a basis for subject-matter jurisdiction in this case.

plaintiffs argued, that "a final decision on a claim for benefits permits a beneficiary to raise *any* separate claim pertaining to the agency's procedure or policy in federal court." *Id.* (emphasis in original).

The Ninth Circuit rejected this "overly broad" interpretation of *Eldridge*. *Id.* at 1112–13. It instead found that the purpose of the presentment requirement is to allow an agency "greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts applying 'ripeness' and 'exhaustion' exceptions," and that this purpose  "would not be fulfilled if plaintiffs are permitted to raise claims in federal court that were not raised before the agency." *Id.* at 1113 (quoting *Illinois Council*, 529 U.S. at 12–13). Because the beneficiaries did not present their collateral claims to the Secretary, and therefore "did not provide an opportunity for the Secretary to consider the claim that her interpretation of the secondary payer provisions exceeded her authority," the court concluded that the beneficiaries did not satisfy the presentment requirement. *Id.* at 1113.

Plaintiff argues that *Haro* does not require it to have presented its *constitutional* challenge to the agency. It asserts that its due process claim is distinguishable from the challenges to the agency's policies in *Haro*. As Plaintiff states, *Haro* does "not require that *every* claim be presented to the agency before such a claim could be heard by federal court." (Doc. 18 at 4.) The Court agrees that *Haro* did not necessarily go so far as to require every possible claim to be presented to the agency before it may be raised in federal court. But it finds that Plaintiff ultimately provides a distinction without a difference.

As noted, the *Haro* court found that the purpose of the presentment requirement is a "greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts applying 'ripeness' and 'exhaustion' exception." *Haro*, 747 F.3d at 1113. While the Court understands that a challenge to a specific agency policy and a due process claim are not identical, it ultimately agrees with Defendants that, however characterized, Plaintiff in this case seeks "to stay the Secretary's practice of exercising its recoupment authority prior to an ALJ hearing." (Doc.

20 at 3.)

Plaintiff contends that Defendants cannot be correct in light of *Eldridge*. It points to the Supreme Court's assertion that "[t]he fact that Eldridge failed to raise with the Secretary his constitutional claim to a pretermination hearing is not controlling" and "failure to have raised [the plaintiff's] constitutional claim [to the agency] would not bar him asserting it later in a district court." *Eldridge,* 424 U.S. at 329, 329 n.10. The Court agrees that those statements, alone, support Plaintiff's argument. Nonetheless, the Ninth Circuit has specifically rejected the "overly broad" reading of *Eldridge* that Plaintiff advocates. *Haro*, 747 F.3d at 1113. The Ninth Circuit emphasized the fact that in *Eldridge*, "the plaintiff's argument that he was entitled to a pretermination evidentiary hearing had direct bearing on the termination of his benefits." *Id*. at 1113. But in *Haro*, as in this case, the claim before the district court was *collateral* to the overpayment claim before the agency. The Ninth Circuit accordingly "decline[d] to adopt the extraordinarily broad reading of *Eldridge* that the beneficiaries invite." *Id*. This Court does, as well.

Other courts in this Circuit have reached the same conclusion. In an unpublished memorandum opinion, the Ninth Circuit recently affirmed the district court's dismissal of a Medicare provider's due process claim regarding alleged overpayment recoupment. *See H. Babaali M.D. Med. Inc. v. Azar*, 798 F. App'x 56, 58 (9th Cir. 2019). As in the present case, the plaintiff challenged the overpayment decision before the agency, but "never presented to the agency a request for a stay of recoupment, nor did it seek an extended repayment plan." *Id*. at 58. The court concluded that "[a]s a result, it fail[ed] to meet the unwaivable presentment requirement, and the Court may not entertain [plaintiff]'s due process claim." *Id*.

Multiple district courts have also found that they lacked subject-matter jurisdiction over substantially similar, if not identical, circumstances as in the present case. *Baron & Baron Med. Corp. v. Hargan*, No. 17-CV-2133 DMS (JLB), 2018 WL 3532915, at *2 (S.D. Cal. July 23, 2018) ("Plaintiff, however, has not shown it presented its claims challenging the recoupment to the Secretary. This element cannot be waived, as such, and no decision

can be rendered if this requirement is not satisfied."); *Ramtin Massoudi MD Inc. v. Azar*, No. 2:18-CV-1087-CAS(JPRX), 2018 WL 1940398, at *6 (C.D. Cal. Apr. 23, 2018) ("Like the beneficiaries in *Haro*, the Court finds that nothing in the record indicates that plaintiff presented its claim concerning the unlawfulness of the recoupment process to the Secretary. Accordingly, it appears that plaintiff has failed to satisfy the presentment requirement concerning its requested injunctive relief, which is a 'purely jurisdictional' requirement."); *All Home Med. Supply, Inc.*, 2019 WL 2422690, at *3 ("Because [plaintiff] has not shown that it presented its due process claim to the Secretary, this Court lacks subject matter jurisdiction to hear its challenge."). Plaintiff asserts that each of these opinions "suffers from the same improper reading of *Haro* that Defendants advocate here." (Doc. 18 at 5 n.2.) But because the Court disagrees with Angel's Touch's reading of *Haro*, it is not convinced by this argument.

The Court does recognize that courts in other circuits, including the Fifth Circuit Court of Appeals in *Family Rehabilitation*, have found subject-matter jurisdiction to exist in similar due process claims. 886 F.3d at 504. Nonetheless, *Family Rehabilitation* "is not binding on this Court and it is inconsistent with both the Ninth Circuit's decision in *Haro* and the decisions of other district courts in this Circuit." *All Home Med. Supply, Inc*, 2019 WL 2422690, at *3. Plaintiff appears to recognize as much, noting that "only in the Ninth Circuit have Defendants argued that, by failing to first submit the constitutional challenge to the Secretary, providers have not satisfied the 'presentment' requirement." (Doc. 18 at 3.) Ultimately, however, "it is not the job of this Court to harmonize circuit splits, but to apply binding Ninth Circuit authority." *Id.*

### b.     Availability of Challenge and Review

Plaintiff emphasizes that to bring a constitutional claim before the Secretary would be "practically impossible." (Doc. 18 at 3.)  It states that there is "no mechanism by which to bring this constitutional challenge before the Secretary." (*Id.* at 5.) That does not appear to be correct. Defendants state that "Plaintiff has had, and will continue to have, the opportunity to assert any factual, legal, or procedural challenges it has to the recoupment

process." (Doc. 20 at 4.) Specifically, as the parties presented to the Court at oral argument, the "Medicare Redetermination Request Form" and "Medicare Reconsideration Request Form," used at the first and second stages of the agency appeal process, provide for a beneficiary's written response to the following open-ended statements: "I do not agree with the determination decision on my claim because: . . ." and "Additional information Medicare should consider: . . ." The parties agree that a beneficiary may also submit additional materials beyond the one-page forms. Further, Defendants point to a notice provided to Plaintiff, following the reconsideration decision, stating that recoupment would begin on February 18, 2021. It also states:

> Under existing regulation 42 C.F.R. section 405.374, **providers and other suppliers will have 15 days from the date of this notification to submit a statement of opportunity to rebuttal, including a statement and/or evidence stating why recoupment should not be initiated**. The rebuttal is not an appeal of the overpayment determination, and it will not delay recoupment before a rebuttal response has been rendered; however the outcome of the rebuttal process could change how or if we recoup. If you have reason to believe the withhold should not occur, you must notify this office within 15 days from the date of this letter, at which time we will review your documentation.

(Doc. 4-3 at 78) (emphasis added). Section 405.374, referenced above, provides that upon notice of "the suspension of payment, offset, or recoupment," a Medicare contractor must give the provider or supplier an opportunity to "submit any statement (to include any pertinent information) as to why it should not be put into effect on the date specified in the notice." 42 C.F.R. § 405.374(a). Except as otherwise specified, a provider has "at least 15 days" following the notification to submit such a statement. *Id.* § 405.374(a), (b). Indeed, the relevant regulations also provide that recoupment cannot commence until the MAC notifies the provider of its intention to recoup payment and "give[s] the provider or supplier an opportunity for rebuttal in accordance with § 405.374." *Id.* § 405.373(a)(2). Accordingly, the Court is not persuaded that it would be "practically impossible" for

Plaintiff to submit its due process claim to the Secretary.

Relatedly, the Court is also mindful of Plaintiff's argument that it is "unaware of any authority the Secretary has to rule on or enforce Plaintiff's due process claims." (Doc. 18 at 5.) Defendants' counsel conceded at oral argument that while the first two levels of the administrative appeals process could review a plaintiff's recoupment argument, they would be unlikely to act on it. But to the extent that Plaintiff invokes the "no review at all" exception, the Court is not persuaded. In *Illinois Council*, the Supreme Court identified a narrow "no review at all" exception to the presentment requirement that applies when "what appears to be simply a channeling requirement" is in reality " a *complete* preclusion of judicial review." 529 U.S. at 22–23 (emphasis in original). The Supreme Court noted that it has "often" distinguished between "a total preclusion of review and postponement of review." *Id.* at 19. It also stated that the "no review at all" exception does not apply "simply because that party shows that postponement would mean added inconvenience or cost in an isolated, particular case." *Id.* at 22. Here, as noted, Plaintiff has had opportunities to raise challenges to the recoupment process (not to mention its overpayment appeal). Plaintiff's presumed futility does not negate the presentment requirement. Indeed, "[i]f a court were to prematurely tackle a question inextricably intertwined with an issue properly resolved by an agency, the court would defeat the purposes of § 405(g) and (h) even if the question was not one that the agency has the authority to answer fully." *Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1115 n.3 (9th Cir. 2003). Accordingly, the Court does not find the "no review at all" exception contained in *Illinois Council* to be a persuasive justification for bypassing the presentment requirement.

### c.    Supplemental Authority

In a notice of supplemental authority, Plaintiff also points to a recent Supreme Court decision, *Carr v. Saul*, 593 U.S. ---, 141 S. Ct. 1352 (2021), which it says "provides guidance on the scope of the presentment requirement." (Doc. 24 at 2.) In *Carr*, six Social Security plaintiffs each challenged their adverse benefits determinations at the required stages of the administrative appeals process, including at an ALJ hearing. Resulting from

the Supreme Court's decision in *Lucia v. SEC*, 585 U.S. ---, 138 S. Ct. 2044 (2018), and subsequent agency action, the Social Security ALJs at issue were deemed improperly appointed under the Appointments Clause of the United States Constitution. In *Carr*, the question at issue was "whether petitioners forfeited their Appointments Clause challenges by failing to make them first to their respective ALJs." *Carr*, 141 S. Ct. at 1356. The Court ultimately answered in the negative, concluding that the issue exhaustion requirement did not apply due to the "inquisitorial features of SSA ALJ proceedings, the constitutional character of petitioners' claims, and the unavailability of any remedy." *Id.* at 1362.

The Court agrees with Defendants, though, that *Carr* is "legally and factually distinct" from the present case. (Doc. 28 at 2.) For one, *Carr* dealt with the concept of issue exhaustion, not exhaustion of administrative remedies, as here. Indeed, the Supreme Court specifically stated that "[i]ssue exhaustion should not be confused with exhaustion of administrative remedies." *Id.* at 1358 n.2. The opinion was also specifically limited to the Appointments Clause challenge context: "[o]utside the context of Appointments Clause challenges, . . . the scales might tip differently." *Id.* at 1360 n.5.

Further, *Carr* also involved a unique circumstance that is not present here. The *Carr* petitioners exhausted their benefits determinations through the administrative appeals process prior to the Supreme Court's decision in *Lucia*, such that the claimants would have been required to argue that their own respective ALJs were unconstitutionally appointed— before  the Supreme Court and subsequent agency action determined as much. No such scenario exists in the present case, in which, given the nature of the Medicare appeals backlog, Plaintiff presumably knew about the prospect of a lengthy delay during the first two levels of the appeal process. Defendants also point to various distinctions between Social Security appeals, as in *Carr*, and Medicare appeals, as in this case. For example, Medicare appeals do not permit the submission of new documentary evidence at the ALJ stage, whereas in the Social Security context, new evidence can be submitted up to five days before the ALJ process. (Doc. 28 at 3) (citing 42 C.F.R. § 405.966(a); 20 C.F.R. § 404.935). Social Security ALJs also have an affirmative duty to develop the record,

whereas no such duty exists in the Medicare context. (*Id.*) (citing 20 C.F.R. § 404.1521; 42 C.F.R. § 405.1034(a)). The Court is not convinced that *Carr* eliminates the presentment requirement in this case.

\*          \*          \*

For all of these reasons, the Court finds that Plaintiff failed to present its due process claim to the Secretary. The Court therefore lacks subject-matter jurisdiction over the present dispute under 42 U.S.C. § 405(g).

## 2.    Exhaustion of Administrative Remedies

Even had Plaintiff presented its due process argument to the agency, the Court would still lack jurisdiction because, at minimum, Plaintiff has not made a colorable showing that denial of the relief it seeks will cause irreparable harm. In addition to the presentment requirement, jurisdiction under *Eldridge* also requires waiver of the administrative exhaustion requirement. This three-prong test requires the claims to be "(1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that denial of relief will cause irreparable harm (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility)." *Johnson v. Shalala*, 2 F.3d 918, 921 (9th Cir. 1993) (citing *Eldridge*, 424 U.S. at 331). Here, Defendants concede that Plaintiff's due process claim is collateral to the underlying overpayment appeal. As such, the parties dispute only the irreparability and futility claims. (Doc. 23 at 13 n.8.)

Plaintiff asserts that denial of the relief it seeks will cause irreparable harm because, should recoupment commence before an ALJ hearing, it "faces certain closure and bankruptcy." (Doc. 10 at 13.) Plaintiff does not present significant evidence in support of this statement. It asserts that at least 98 percent of its revenue derives from Medicare reimbursement. (Doc. 10-3 at 81 ¶ 5; Doc. 23 at 3 ¶ 4.) Specifically, in 2020, Medicare reimbursement accounted for $5,508,726.00 of its total revenue of $5,582,122.00. (Doc. 23 at 3 ¶ 5.) It also states that, "[i]mmediately, Angel's Touch would have no choice but to lay off most of its 51 employees, and Angel's Touch's 312 often elderly, critically and terminally ill patients would be forced to find alternative care in a scarce market." (Doc.

18 at 7.) Plaintiff does not provide other financial information such as balance sheets, financial statements, or other evidence of its assets and liabilities.

A "colorable showing of irreparable injury for purposes of waiver of the exhaustion requirement is one that is not wholly insubstantial, immaterial, or frivolous." *Briggs v. Sullivan*, 886 F.2d 1132, 1140 (9th Cir. 1989) (citing *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987) (quotations omitted)). A "colorable" claim is a "plausible claim that may reasonably be asserted, given the facts presented and the current law (or a reasonable and logical extension or modification of the current law)." Black's Law Dictionary (11th ed. 2019). The Court agrees with Defendants that Plaintiff has not made a colorable showing of irreparable injury.

Should Plaintiff eventually prevail on its overpayment challenge before the Secretary, it will be repaid all unnecessarily recouped amounts plus interest. 42 U.S.C. § 1395ddd(f)(2)(B) ("Insofar as such determination against the provider of services or supplier is later reversed, the Secretary shall provide for repayment of the amount recouped plus interest at the same rate as would apply under the previous sentence for the period in which the amount was recouped."). In the Ninth Circuit, "[m]ere financial injury will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation." *People of California v. Tahoe Regional Planning Agency*, 766 F.2d 1316, 1319 (9th Cir. 1985) (citation omitted); *Casa Colina Hosp. & Centers for Healthcare v. Wright*, 698 Fed. Appx. 406, 407 (9th Cir. 2017) ("[plaintiff] lacks an irreparable injury because a future award of damages plus interest will make it whole."); *Ramtin Massoudi MD Inc.*, 2018 WL 1940398, at *7 ("Ninth Circuit authority holds that monetary injury is normally not considered irreparable").

Plaintiff cites *American Passage Media Corp. v. Cass Communications, Inc.*, 750 F.2d 1470 (9th Cir. 1985) for the proposition that "the threat of being driven out of business is sufficient to establish irreparable harm." *Id*. at 1474. That case involved alleged Sherman Act violations; the Court of Appeals examined the threat of irreparable injury only in the context of the plaintiff's motion for preliminary injunction. Although the court noted that

the threat of going out of business is sufficient for irreparable harm, it ultimately concluded that the plaintiff had *not* made such a showing. The plaintiff's president's assertions regarding large losses the previous year, plus forecasted large losses the following year, "standing alone, are insufficient evidence that [plaintiff] is threatened with extinction." *Id*. The Court finds this to be a substantially similar circumstance to this case, and is therefore not persuaded by *American Passage*.

Plaintiff also cites *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 993 (9th Cir. 2019) for the same proposition, in which the Ninth Circuit found that the district court did not err in concluding that plaintiff faced a likelihood of irreparable injury because it "found credible hiQ's assertion that the survival of its business is threatened absent a preliminary injunction." *Id*. at 993. It noted that the "record provides ample support for that finding." *Id*. Even were that the case here—which the Court does not believe to be the case—the Medicare appeals context also provides additional reasons to find that Plaintiff has not made a colorable showing of irreparable injury.

For one, Medicare providers may apply to CMS for an "Extended Repayment Schedule" of its assessed overpayment. *See* 42 U.S.C. § 1395ddd(f)(1)(A); 42 C.F.R. § 401.607(c)(2)(vi). Subject to certain qualifications, a provider may repay the alleged overpayment in monthly installments over a term of up to five years in cases of "extreme hardship." 42 U.S.C. § 1395ddd(f)(1)(A). Plaintiff has not requested a repayment plan.[6] In its briefing, Plaintiff vaguely alludes to "contractual obligations" that render it "unable" to enter into an extended repayment schedule. (Doc. 10 at 21.) At oral argument, Plaintiff's counsel asserted that it would default on various lending agreements if it entered into an Extended Repayment Schedule. Plaintiff has not presented evidence of these agreements. The Court is not convinced that the existence of such independent agreements would constitute irreparable harm caused by Defendants. Other courts have also considered a provider's failure to apply for a repayment plan in concluding that it could not make a

---

[6] At oral argument, Defendants' counsel was not certain whether this option remained available to Plaintiff. Upon the Court's review, the relevant regulations do not appear to specify a clear deadline to apply for the Extended Repayment Schedule.

colorable showing of an irreparable injury. *See Baron & Baron Med. Corp.*, 2018 WL 3532915, at *3 ("[I]f Plaintiff believed it would face significant financial hardship due to recoupment, it could have requested to repay the overpayment in monthly installments overtime [sic], which it has failed to do. . . . Under these circumstances, Plaintiff has failed to demonstrate irreparable injury, and thus, a basis for waiver of the exhaustion requirement."); *Ramtin Massoudi MD Inc.*, 2018 WL 1940398, at *7–8 ("Because plaintiff fails to sufficiently demonstrate irreparability, and in light of its failure to request an ERS, and because irreparability is a prerequisite to determining waiver, the Court finds that plaintiff fails to demonstrate a basis for waiver of the administrative exhaustion requirements.").

In addition, Plaintiff's argument is undercut by the fact that a provider may "escalate" its appeal directly from step two to step four, thereby bypassing the ALJ stage, should the ALJ not issue a decision within 90 days of Plaintiff's notice of appeal, as here. 42 U.S.C. § 1395ff(d)(3)(A). Plaintiff asserts that this option is not feasible because, should it bypass the ALJ stage, it "will entirely skip the ALJ hearing and likely never receive a hearing at all, let alone an evidentiary one."[7] (Doc. 18 at 15.) While this may the case, nonetheless this option is available to Plaintiff and a means by which Medicare providers may bypass the significant Medicare appeals backlog. The escalation procedure "undermines Plaintiff's arguments that exhausting the administrative review process would be futile and cause irreparable harm, as Plaintiff can elect to speed up the review process if it so chooses." *AvuTox, LLC. v. Burwell*, 2017 WL 767449, *5 (E.D. N.C. 2017).

Because Plaintiff has not sufficiently shown a colorable claim of irreparability, the Court finds that Plaintiff has not demonstrated a basis for waiver of the administrative exhaustion requirements. For this independent reason, the Court lacks subject-matter jurisdiction over this dispute.

---

[7] While the Appeals Council is authorized to conduct hearings, *see* 42 C.F.R. § 405.1108, Plaintiff asserts that the Appeals Council generally does not hold a hearing, absent an "extraordinary" circumstance. (Doc. 18 at 15-16.) Defendants do not appear to dispute this.

**B.      Motion for Preliminary Injunction**

Because the Court determines that it does not have jurisdiction over this dispute, it does not reach the merits of Plaintiff's motion for preliminary injunction. Were the Court the reach the merits, it would deny the motion for, at minimum, failure to demonstrate a likelihood of irreparable harm, for similar reasons as discussed above. *Winter*, 555 U.S. at 24.

**IV.      CONCLUSION**

The Court finds that under binding Ninth Circuit law, Plaintiff has neither presented its due process claim to the Secretary, nor raised a colorable claim of irreparable harm. The Court therefore lacks subject-matter jurisdiction and will dismiss this case pursuant to Rule 12(b)(1).

The Court is mindful that providers, including Plaintiff, who disagree with an overpayment determination must then navigate "Medicare's Byzantine four-stage administrative appeals process." *Family Rehab., Inc.*, 886 F.3d at 498. The Court also recognizes that the "systemic failure" to timely hear Medicare appeals is in no way the fault of Plaintiff and other Medicare providers. *American Hospital Association v. Burwell*, 812 F.3d 183, 191 (D.C. Cir. 2016). But Congress anticipated that occasional individual hardship would result when it enacted four-stage Medical appeals process. The Supreme Court has stated that Congress intended § 405(h), which precludes federal question jurisdiction over Medicare claims, to:

> [a]ssure[] the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts applying "ripeness" and "exhaustion" exceptions case by case. *But this assurance comes at a price, namely, occasional individual, delay-related hardship*. In the context of a massive, complex health and safety program such as Medicare, embodied in hundreds of pages of statutes and thousands of pages of often interrelated regulations, any of which may become the subject of a legal challenge in any of several different courts, paying this price may seem justified.

*Illinois Council*, 529 U.S. at 13 (emphasis added).

By ultimately denying Plaintiff's requested relief, the Court does not diminish the hardship that that Plaintiff may suffer from the administrative delay that is no fault of its own.

Accordingly,

**IT IS ORDERED granting** the Federal Defendants' Combined Motion to Dismiss Plaintiff's Complaint (Doc. 16).

**IT IS FURTHER ORDERED denying** Plaintiff's Motion for Preliminary Injunction as moot. (Doc. 2).

**IT IS FINALLY ORDERED** directing the Clerk of the Court to close this case, entering judgment accordingly.

Dated this 26th day of May, 2021.

Michael T. Liburdi
United States District Judge